IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TITLEMAX OF ALABAMA, INC., | ) |
| | ) |
|     Appellant, | ) |
| | ) |
| v. | ) CASE NO. 2:21-cv-630-ECM |
| | )             [WO] |
| HAZEL MARIE ROBY, | ) |
| | ) |
|     Appellee. | ) |

**MEMORANDUM OPINION AND ORDER**

This appeal concerns Hazel Marie Roby's ("Roby") prepetition conduct in renewing her pawn agreement with TitleMax of Alabama, Inc. ("TitleMax"), despite knowing that she was going to file for Chapter 13 bankruptcy protection that same day. After Roby filed for bankruptcy protection and submitted her proposed plan, TitleMax objected, claiming that Roby lacked good faith in proposing her plan. In the alternative, TitleMax claimed that Roby's most recent pawn renewal was void for fraud under Alabama state law. At an evidentiary hearing, the bankruptcy court concluded that a clause in the pawn agreement was unenforceable and that Roby proposed her plan in good faith. The court overruled TitleMax's objection and confirmed Roby's proposed plan. This appeal followed.

**JURISDICTION**

The bankruptcy court's confirmation of a Chapter 13 plan is a final order. *See Catlin v. United States*, 324 U.S. 229, 233 (1945) ("A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the

judgment."). The district court has jurisdiction to hear appeals from all final orders of the bankruptcy court. 28 U.S.C. § 158(a)(1).

## STANDARD OF REVIEW

In an appeal of a bankruptcy court decision, the district court sits as an appellate court. *In re Williams*, 216 F.3d 1295, 1296 (11th Cir. 2000) (per curiam). The district court reviews the bankruptcy court's findings of fact under the clearly erroneous standard and conclusions of law under the *de novo* standard. *In re Piazza*, 719 F.3d 1253, 1260 (11th Cir. 2013).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The underlying facts behind this appeal are not in dispute. Roby entered an initial pawn agreement with TitleMax on October 2, 2020 on a 2013 BMW 7-Series ("the vehicle") for $2,500.00. Under the terms of the pawn agreement, Roby could redeem her vehicle by paying $2,774.75 on or before November 11, 2020, the maturity date. If Roby did not pay the redemption price by the maturity date, TitleMax had the option to enter a new pawn transaction with Roby by "renewing" her pawn. If the pawn agreement was not renewed, Roby had an additional thirty days to redeem the vehicle in accordance with the Alabama Pawnshop Act's statutory redemption period. *See* Ala. Code. § 5-19A-10(b). If Roby did not redeem the vehicle within the thirty-day statutory redemption period, title and complete ownership would be forfeited to TitleMax.

Clause 22(j) of the initial pawn agreement between Roby and TitleMax states, "By signing this Agreement, Pledgor represents, warrants, acknowledges and agrees as follows . . . You are not a debtor in bankruptcy. You do not intend to file a federal

bankruptcy petition." (Doc. 2-6 at 14). This clause was included in all subsequent agreements between Roby and TitleMax. At an evidentiary hearing, a representative from TitleMax testified that TitleMax would not enter a pawn agreement with a customer that indicated an intent to file bankruptcy.

On a monthly basis following the initial pawn, Roby renewed her agreement with TitleMax without redeeming her vehicle. On March 21, 2021, Roby once again renewed her pawn agreement with TitleMax. Under the terms of the renewal, Roby could redeem her vehicle through a payment of $8,210.73 on or before April 20, 2021, the maturity date. Roby renewed her pawn agreement with TitleMax for a final time on April 23, 2021. This agreement allowed Roby to redeem her vehicle through a payment of $8,210.73 on or before May 23, 2021, the maturity date. TitleMax offered to lend Roby additional cash with this renewal, but Roby rejected the offer. Later in the day on April 23, 2021, Roby filed a Chapter 13 bankruptcy petition.

Roby admits that she intended to file her Chapter 13 bankruptcy petition at the time she entered the April 23 pawn agreement with TitleMax. In fact, Roby retained a bankruptcy attorney and provided him with the necessary filing information prior to signing the April 23 agreement. Roby completed a credit counseling course—a prerequisite to filing Chapter 13 bankruptcy—on April 22, 2021. At no point while or before renewing her pawn agreement did Roby inform TitleMax that she intended to file a Chapter 13 petition.

Roby's Chapter 13 plan listed TitleMax as a secured creditor on the vehicle. TitleMax objected to the confirmation of Roby's Chapter 13 plan and TitleMax's

classification within the plan as a secured creditor.[1] TitleMax argued that Roby's Chapter 13 plan was not filed in good faith because of the misrepresentation Roby made in clause 22(j) of the April 23 agreement. Alternatively, it argued that the April 23 agreement was void because it was induced by fraud. At the evidentiary hearing, the bankruptcy court rendered clause 22(j) of the pawn agreement unenforceable as against public policy. Following that determination, the bankruptcy court found that Roby's plan was proposed in good faith and confirmed Roby's Chapter 13 plan over TitleMax's objection. This appeal followed.

## DISCUSSION

TitleMax puts forward six issues on appeal. TitleMax argues that the bankruptcy court erred in (1) concluding that clause 22(j) of the TitleMax pawn agreement was unenforceable as against public policy, (2) finding the April 23, 2021 pawn agreement was enforceable against TitleMax and not void for Roby's fraud, (3) finding that Roby's plan was proposed in good faith, (4) finding that Roby incurred the debt associated with the April 23, 2021 pawn transaction in good faith, (5) confirming Roby's Chapter 13 plan treating TitleMax as a secured creditor, and (6) overruling TitleMax's objection to the confirmation plan. Because of these errors, according to TitleMax, the vehicle was improperly included as a part of Roby's bankruptcy estate.

The heart of this dispute stems from the distinction between *In re Womack*, 2021

---

[1] TitleMax's objection stemmed from its belief that the case fell under *In re Northington* rather than *In re Womack*. This distinction, as well as its impact on the bankruptcy proceeding, is discussed in greater detail below.

WL 3856036 (11th Cir. Aug. 30, 2021), and *In re Northington*, 876 F.3d 1302 (11th Cir. 2017).  Under *Womack*, a debtor that files bankruptcy while party to an unmatured pawn agreement—an agreement that has not yet reached its maturity date—transfers her possessory and ownership interests in the relevant property to her bankruptcy estate. *Womack*, 2021 WL 3856036 at *2.  While the pawnbroker maintains a security interest in the relevant property, that interest is subject to the debtor's bankruptcy protections.  Thus, the property receives the protection of the automatic stay, the debtor maintains her right to modify her interest in the property in a Chapter 13 plan, and the estate's interest in the property is not impacted by forfeiture or the statutory redemption period. *Id.* at *3.

However, if a debtor files bankruptcy after the maturity date of the pawn agreement expires, *In re Northington* applies. *Id.*  In that situation, the bankruptcy estate inherits the debtor's statutory right to redeem the property subject to the pawn agreement. *See Northington*, 876 F.3d at 1310–11.  However, the automatic stay does not freeze the statutory redemption period. *Id.* at 1314–15.  Thus, the redemption period continues to run, subject to the sixty-day extension granted by federal law, *see* 11 U.S.C. § 108(b), after the debtor files her bankruptcy petition. *Northington*, 876 F.3d at 1313.  When the statutory period expires, the property is forfeited to the pawnbroker and does not receive the protection of the automatic stay. *Northington*, 876 F.3d at 1315.

TitleMax asserts that Roby's bankruptcy estate possessed only a statutory right to redeem the vehicle under *Northington*.  Roby argues that her bankruptcy estate had an ownership interest in the vehicle subject to TitleMax's lien, as seen in *Womack*.

The bankruptcy court's determination that clause 22(j) was unenforceable as against

public policy was central to its treatment of TitleMax as a secured creditor under *Womack*. Having rendered the clause unenforceable, the court found that Roby's Chapter 13 plan was proposed in good faith under the eleven-factor test set forth in *In re Kitchens*, 702 F.2d 885 (11th Cir. 1983) (per curiam). Finding that Roby's petition was filed in good faith, the court confirmed her Chapter 13 plan.

For the reasons that follow, the Court finds that the bankruptcy court's order confirming the plan is due to be vacated. This matter will be remanded for further proceedings consistent with this decision.

### A. Clause 22(j) of the TitleMax Pawn Agreement Is Enforceable

The bankruptcy court declared as a matter of law that clause 22(j) of the TitleMax pawn agreement was unenforceable as against public policy. In clause 22(j), Roby made two relevant representations at the time she contracted with TitleMax:

> Pledgor represents, warrants, acknowledges and agrees . . . You are not a debtor in bankruptcy. You do not intend to file a federal bankruptcy petition.

(Doc. 2-6 at 14).

The bankruptcy court considered this clause an impermissible attempt by "TitleMax to try to contract around the Bankruptcy Code." (Doc. 2-18 at 28). The court compared this case to *In re Lucas*, which provides that "a stipulation to the effect that a debt will not discharge in a future bankruptcy case is not enforceable as it is against public policy." *In re Lucas*, 477 B.R. 236, 245–46 (Bankr. M.D. Ala. 2012). According to the bankruptcy court, if clause 22(j) of the pawn agreement is taken "at face value, then no TitleMax borrower could ever file bankruptcy without breaching the term loan." (Doc. 2-18 at 27). Thus, the court found that clause 22(j) impermissibly attempted to contract away Roby's

ability to file bankruptcy and declined to enforce the clause.

On appeal, TitleMax asserts that clause 22(j) is not a prepetition waiver of Roby's ability to file bankruptcy. In its view, the clause only "requires the Debtor to tell the truth about her present intentions with regard to bankruptcy." (Doc. 3 at 33). The debtor is not prohibited from forming an intention to file bankruptcy "the next week, the next day or even the next hour" after signing the agreement. (*Id.*). Such debtors could contract with TitleMax and later file bankruptcy petitions without violating clause 22(j).

In support of its position, TitleMax cites to a recent opinion in *TitleMax of Ala., Inc. v. Arnett*, 2022 WL 3587339 (M.D. Ala. Aug. 22, 2022). In *Arnett*, the debtors signed vehicle pawn agreements with TitleMax. Those agreements contained clauses identical to clause 22(j) in Roby's agreement. *See id.* at *1. Despite acknowledging clause 22(j), both debtors admitted that they intended to file bankruptcy—and subsequently did file bankruptcy—when they renewed their pawn agreements with TitleMax. *Id.* at *1–2. The bankruptcy court held that clause 22(j) was unenforceable as against public policy, construing the clause as a prepetition waiver of the debtors' bankruptcy protections. *Id.* at *3.

On appeal, the district court determined that clause 22(j) was enforceable. *Id.* at *4. The court reasoned that the language in the contract did not waive the debtors' bankruptcy protections. *Id.* Clause 22(j) did not prohibit debtors from filing for bankruptcy, did not waive the protection of the automatic stay, and did not waive the debtors' rights to discharge. *Id.* Rather, the clause only required the debtors to affirm "that they were not presently in bankruptcy and that they had no present intent to file for bankruptcy protection." *Id.* at *4. The district court noted that the affirmation of present intent in clause 22(j) did not prohibit debtors

from forming an intent to file bankruptcy after signing the agreement. *Id.* Thus, clause 22(j) did not thwart the debtors' bankruptcy protections or prevent them from filing bankruptcy altogether. *Id.*

Roby dedicates little ink on appeal as to why clause 22(j) is unenforceable as against public policy. Roby points out that "[t]he Bankruptcy Court did discuss it's [sic] opinion that the provision in the TitleMax contract at issue was void as against public policy," (doc. 4 at 11), and provides a seventeen-paragraph block quote from the evidentiary hearing transcript (*id.* at 6–9). Roby herself, however, does not provide any case law supporting her argument that clause 22(j) is unenforceable as against public policy.

The Court concludes, under its *de novo* review, that clause 22(j) in the TitleMax pawn agreement is enforceable because it does not amount to a prepetition waiver of the debtor's bankruptcy protections. *See Lipcon v. Underwriters at Lloyd's London*, 148 F.3d 1285, 1290 (11th Cir. 1998) (applying *de novo* review to its interpretation of a contract). In so ruling, the Court finds the court's reasoning in *Arnett* persuasive.

In rendering clause 22(j) unenforceable, the bankruptcy court misconstrued the language in the agreement. The agreement does not, as the bankruptcy court feared, prevent TitleMax customers from filing bankruptcy altogether. Rather, the agreement only requires debtors to represent their *present* intent regarding filing bankruptcy. The language does not prohibit debtors from changing their intent after signing the agreement and then filing for bankruptcy. Thus, debtors do not waive the protection of the bankruptcy code by signing clause 22(j) in the pawn agreement.

*Lucas*, the decision relied upon by the bankruptcy court in rendering the clause

8

unenforceable, does not hold otherwise. *Lucas* involved a creditor's attempt to waive the debtor's right to discharge a debt in bankruptcy. *Lucas*, 477 B.R. at 246. *Lucas* warned that "stipulations to the effect that a debt will not discharge in a subsequent bankruptcy case are not enforceable as they violate public policy." *Id.* at 247. The case at hand, however, is distinguishable from *Lucas*. Clause 22(j) does not attempt to waive a debtor's right to receive a discharge in bankruptcy. Rather, it asks the debtor if she intends to file bankruptcy. TitleMax uses this information to make underwriting decisions, not to bar debtors from bankruptcy discharges. As such, *Lucas* carries little weight in determining the clause's enforceability on public policy grounds.

Accordingly, on this issue, the bankruptcy court erred, and clause 22(j) should have been considered enforceable in evaluating Roby's Chapter 13 plan.

### B. The Bankruptcy Court's Finding of Good Faith Is Vacated

Additionally, TitleMax contends that the bankruptcy court erred in determining that Roby proposed her Chapter 13 plan in good faith. TitleMax argues that Roby "did not deal honestly with TitleMax" because she represented that she had no intention of filing for bankruptcy despite her admitted intent to file a Chapter 13 petition that same day. (Doc. 3 at 25).

In determining that Roby proposed her Chapter 13 plan in good faith, the bankruptcy court applied the appropriate eleven-factor *Kitchens* test. The court's analysis centered on the tenth *Kitchens* factor. (*See* Doc. 2-18 at 25–30). The tenth factor examines "the circumstances under which the debtor has contracted [her] debts and [her] demonstrated bona fides, or lack of same, in dealings with [her] creditors." *Kitchens*, 702 F.2d at 889.

The bankruptcy court listed several facts that, in the court's opinion, indicated Roby's good faith in filing her petition. First, was the lack of dispute regarding Roby's good faith in her dealings with any creditors other than TitleMax. (Doc. 2-18 at 25). Looking specifically to Roby's interactions with TitleMax, the court emphasized the length of the parties' relationship. (*Id.* at 26). Next, Roby declined TitleMax's offer for additional money when she renewed her pawn. Further, Roby planned to pay her debt in full and maintained a substantial degree of equity in the vehicle. Finally, Roby was subject to an extremely high interest rate and acted out of a desire to keep her vehicle. (*Id.* at 28–29). According to the bankruptcy court, the court's determination that Roby's plan was proposed in good faith would remain unchanged if clause 22(j) was enforceable. (*Id.* at 30).

On appeal, TitleMax compares Roby's prepetition actions to those of a debtor fraudulently incurring credit card debt on the eve of bankruptcy. According to TitleMax, Roby incurred a new debt when she renewed her April 23 pawn because she exchanged "an old debt for a new debt." (Doc. 5 at 5) (quoting *Refinancing*, Black's Law Dictionary at 1394 (9th ed. 2009)). Thus, in the eyes of TitleMax, "the bankruptcy court's distinction between a renewal where no additional money is advanced, and a pawn agreement where a debtor is paid cash directly" was improper, and the court erred "[t]o the extent the bankruptcy court found that [Roby] acted in good faith based on that distinction." (*Id.* at 6–7). Notably, TitleMax cites no case law supporting its assertion.

Roby argues that the bankruptcy court completed a thorough review of the testimony and documents from the case before determining that her plan was submitted in good faith. Roby emphasizes that she did not receive "any fresh case [sic]" when she renewed her final

pawn agreement. In Roby's view, she did not acquire any new debt on the eve of filing her Chapter 13 petition. Under a clearly erroneous standard, Roby finds these factors sufficient to uphold a finding of good faith.

"A bankruptcy court's determination whether a chapter 13 plan has been proposed in good faith is a finding of fact reviewable under the clearly erroneous standard." *In re Brown*, 742 F.3d 1309, 1315 (11th Cir. 2014) (citation omitted). Under a clearly erroneous standard, "the factual findings of a trial court must be allowed to stand unless the reviewing court is left with the definite and firm impression that a mistake has been made." *Am. Nat'l Bank of Jacksonville v. Fed. Deposit Ins. Corp.*, 710 F.2d 1528, 1534 (11th Cir. 1983) (citing *Morgado v. Birmingham-Jefferson Cnty. Civ. Def. Corp.*, 706 F.2d 1184 (11th Cir. 1983)).

In reviewing the bankruptcy court's findings of fact, the Court first notes that the agreement's interest rate has no influence on the tenth *Kitchens* factor. The focus must be on Roby's bona fides, not TitleMax's behavior. Thus, the bankruptcy court erred to the extent it considered the interest rate in determining that Roby's petition was filed in good faith.

Although the bankruptcy court claims to have found Roby's good faith regardless of clause 22(j)'s enforceability, its discussion of the tenth *Kitchens* factor reveals otherwise. In its analysis, the court never weighs Roby's intent in signing the agreement against the factors indicating Roby's good faith. Roby had the admitted intent to file for bankruptcy when she renewed her pawn agreement. Roby could not have intended to honor the terms of her agreement with TitleMax because she intended to modify the terms within a

bankruptcy plan.

This intent is clearly relevant to whether Roby can meet her good faith showing under the tenth *Kitchens* factor. Courts find timing significant when a debtor incurs a debt on the eve of bankruptcy. *In re Crittenden*, 2009 WL 2424331, at *3 (Bankr. M.D. Ala. Aug. 6, 2009) ("The debtor's good faith is often put at issue when she incurs a debt on the eve of bankruptcy. Recently incurred debts bring into question the debtor's *bona fides*, or lack thereof, in dealing with the creditor.").

As the bankruptcy court failed to address Roby's intent in renewing her pawn agreement in its good faith analysis, the court made a clear error in applying the tenth *Kitchens* factor. As such, the bankruptcy court's finding of good faith is VACATED. On remand, the bankruptcy court should assess Roby's good faith under the *Kitchens* factors in light of the enforceability of clause 22(j). In doing so, the bankruptcy court should consider Roby's intent in renewing her pawn agreement immediately prior to filing her bankruptcy petition.

### C. Appellant's Argument Concerning Default Is Waived

TitleMax argues that, because clause 22(j) is enforceable, Roby was in default at the time she filed her Chapter 13 plan. TitleMax points to clause 8 in the April 23 pawn agreement, which provides "[y]ou also will be in default if you made any false representation[,] warranty, promise, or provision in or in connection with entering this Agreement." (Doc. 2-6 at 10). According to TitleMax, Roby's false representation that she did not intend to file bankruptcy placed her in default on her April 23 pawn agreement.

However, TitleMax raises this argument for the first time on appeal. As this argument

was not made in the bankruptcy court, the Court declines to address it. *See Hurley v. Moore*, 233 F.3d 1295, 1297 (11th Cir. 2000) ("Arguments raised for the first time on appeal are not properly before this Court.").

### D. Appellant's Fraud Argument Should Be Considered

TitleMax also argues that the April 23 pawn agreement is void under Alabama law because Roby induced the agreement through deliberate fraud. Because that agreement is void, according to TitleMax, the March 21, 2021 agreement is the most recent contract between the two parties. If the March 21 agreement is the most recent contract, this case falls under *Northington*, rather than *Womack*, because the maturity date on April 20, 2021 pre-dated Roby's bankruptcy petition on April 23, 2021. If *Northington* applies, Roby's Chapter 13 plan cannot be confirmed as it currently stands with TitleMax classified as a secured creditor.

Because the bankruptcy court found that clause 22(j) was unenforceable as against public policy, the court did not address TitleMax's argument regarding fraud. On remand, the bankruptcy court should consider this argument in light of the Court's holding that clause 22(j) is enforceable.

### CONCLUSION

For the foregoing reasons, the bankruptcy court's order confirming the Appellee Roby's plan is VACATED, and this matter is REMANDED for further proceedings consistent with this decision. The bankruptcy court is ORDERED to reconsider the

*Kitchens* factors in accordance with this ruling.

DONE this 19th day of September, 2022.

                                        /s/ Emily C. Marks
                                    EMILY C. MARKS
                                    CHIEF UNITED STATES DISTRICT JUDGE